UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

**10 CIV 5771**

Moises Sandoval, Manuel Sandoval, Saleh Aldailam, and Emilio Torres, individually and on behalf of all others similarly situated,

Index No. ____



ECF C...

Plaintiffs,

COMPLAINT

-against-

Civil Action

U.S.D.C. S.D. N.Y. CASHIERS

Galaxy General Contracting Corp., S & Z Construction Corp., Morningside Builders LLC, Putnam-Deegan L.P., Steve Zervoudis, and John Doe Bonding Companies 1 Through 20,

**Jury Trial Demanded**

Defendants.
----------------------------------------------------------------X

Plaintiffs Moises Sandoval, Manuel Sandoval, Saleh Aldailam, and Emilio Torres,

individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), by and

through their attorneys, Arenson, Dittmar & Karban, as and for their Complaint against

Defendants Galaxy General Contracting Corp. ("Galaxy"), S & Z Construction Corp. ("S & Z"),

Morningside Builders LLC ("Morningside"), Putnam-Deegan L.P. ("Putnam"), and Steve

Zervoudis (collectively, "Defendants"), as well as Defendants John Doe Bonding Companies 1-

20, respectfully allege as follows:

## NATURE OF THE ACTION

1.     This is a civil action for declaratory relief, unpaid wages, unpaid overtime wages,

liquidated damages under federal law, attorneys' fees and costs, and for any and other available

remedies for violations of the minimum wage and overtime provisions of federal and state law.

2.     Plaintiffs bring this action on behalf of themselves and all similarly situated

current and former employees of Defendants who elect to opt into this action pursuant to the Fair

Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and specifically the collective action

provision of FLSA 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants, that have deprived Plaintiffs and others similarly situated of their lawful wages.

3.      Plaintiffs also bring this action on behalf of themselves, and a class of similarly situated current and former employees of Defendants, pursuant to Fed. R. Civ. Proc. 23, for unpaid wages, including but not limited to unpaid overtime premium wages, pursuant to the New York Labor Law Article 6 §§ 190 et seq. and Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Relations 12 N.Y.C.R.R. Part 142 ("New York Labor Law").

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      This Court is empowered to issue declaratory relief under 28 U.S.C. §§ 2201 and 2202.

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a).

## PARTIES

**Plaintiffs**

7.      Plaintiff Moises Sandoval is an adult individual who, at all times relevant to this Complaint, has been a resident of the State of New York.

8.      Moises has been an employee of Defendants since approximately April 2000 through the time of the filing of this Complaint.

9.     Plaintiff Manuel Sandoval is an adult individual who, at all times relevant to this Complaint, has been a resident of the State of New York.

10.     Manuel was an employee of Defendants from approximately 1990 or 1991 through September 10, 2008.

11.     Plaintiff Saleh Aldailam is an adult individual who, at all times relevant to this Complaint, has been a resident of the State of New York.

12.     Saleh was an employee of Defendants from approximately 1987 through January 2010.

13.     Plaintiff Emilio Torres is an adult individual who, at all times relevant to this Complaint, has been a resident of the State of New York.

14.     Torres was an employee of Defendants from approximately 2006 through April 2010.

**Defendants**

15.     Upon information and belief, Defendant Galaxy Contracting Corp. was, and is now, a corporation duly organized and existing under the laws of the State of New York, with its principal place of business at 3152 Albany Crescent in the Bronx in the State of New York.

16.     Defendant Galaxy Construction Corp. is a construction company which does substantial business within the metropolitan New York area.  Upon information and belief, Galaxy maintains approximately 15 to 25 construction sites at a time, including several low-income housing projects for the City of New York.

17.     Upon information and belief, Defendant S & Z Construction Corp. was and is now a corporation duly organized and existing under the laws of the State of New York, with its principal place of business at 3152 Albany Crescent in the Bronx in the State of New York.

18.     Upon information and belief, Defendant Morningside Builders was and is now a corporation duly organized and existing under the laws of the State of New York, with its principal place of business at 33 Bonnie Briar Lane in Larchmont in the State of New York.

19.     Upon information and belief, Defendant Putnam-Deegan L.P. was and is now a corporation duly organized and existing under the laws of the State of New York, with its principal place of business at 33 Bonnie Briar Lane in Larchmont in the State of New York.

20.     Upon information and belief, Defendant Steve Zervoudis was and is an individual domiciled in Englewood Cliffs, New Jersey and a citizen of the State of New Jersey.  He is the owner of Galaxy.

21.     Steve Zervoudis actively manages, supervises, and directs the business and operations of Defendants, either directly or through agents.

22.     Steve Zervoudis exercises operational control over significant aspects of the day-to-day functions of the corporate Defendants, either directly or through agents.

23.     Steve Zervoudis has the power to hire and fire employees, either directly or through agents.

24.     Steve Zervoudis determines the salary to be paid to employees, either directly or through agents.

25.     Steve Zervoudis has the power to establish, and did establish, the terms of the employees' employment, either directly or through agents.

26.     Upon information and belief, Defendants John Doe Bonding Companies 1-20 are corporations incorporated or otherwise authorized to do business under the laws of the State of New York, engaged in the surety bonding business, and, issued payment bonds in connection with some or all of Defendants' construction projects.

4

## CLASS AND COLLECTIVE ALLEGATIONS

27.     Plaintiffs bring FLSA claims on behalf of themselves and **all similarly situated persons who work or have worked for Defendants as hourly employees, between July 29, 2007 and the filing of this Complaint** (the "FLSA Class").

28.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate plaintiffs, and as such, notice should be sent to the FLSA Class. Upon information and belief, there are many similarly situated current and former employees of Defendants who have been underpaid in violation of the FLSA who would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. Those similarly situated employees are known to Defendants and are readily identifiable and can be located through Defendants' records.

29.     Plaintiffs also bring New York Labor Law claims on behalf of themselves and a class of persons under Rule 23 of the Federal Rules of Civil Procedure consisting of **all similarly situated persons who work or have worked for Defendants as hourly employees between July 29, 2004 and the filing of this Complaint** (the "Rule 23 Class").

30.     The persons in the Rule 23 Class identified above are so numerous that joinder of all members is impracticable. Upon information and belief, Defendants maintained between 15 and 20 construction sites at any one time over the past six years, all of which required the presence of at least one security guard, and several construction and maintenance workers. Though the facts necessary for a more precise calculation of the number of persons in the Rule 23 Class are presently within the sole control of Defendants, upon information and belief, factoring in turnover, the number of persons in the Rule 23 Class exceeds 50.

31.     The claims of the Plaintiffs are typical of the claims of the Rule 23 Class they seek to represent. Plaintiffs and the Rule 23 Class work or have worked for Defendants at their construction sites and have not been fully compensated for all of the work that they have performed for the benefit of Defendants. Plaintiffs and the Rule 23 Class have not been paid a premium for the hours that they have worked in excess of 40 hours per week. Plaintiffs and the Rule 23 Class have suffered damages, including but not limited to lost regular, overtime, and "spread of hours" compensation, resulting from Defendants' wrongful conduct. Defendants have acted and refused to act on grounds generally applicable to the Rule 23 Class, thereby making declaratory relief with respect to the Rule 23 Class appropriate.

32.     Plaintiffs will fairly and adequately represent and protect the interests of the Rule 23 Class.

33.     Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate declaratory relief with respect to the Rule 23 Class as a whole.

34.     There are questions of law and fact common to the Rule 23 Class that predominate over any questions solely affecting individual members of the Rule 23 Class, including but not limited to:

> (a) whether Defendants have failed to keep true and accurate time records for all hours worked by Plaintiffs and the Rule 23 Class in violation of 12 NYCRR § 142-2.6 and New York Labor Law §§ 661 and 195(4);
>
> (b) what proof of hours worked is sufficient where employers fail in their duty to maintain true and accurate time records;

(c)  whether Defendants have failed to compensate Plaintiffs and the Rule 23 Class for all of the work that they required and permitted them to perform;

(d)  whether Defendants have failed to compensate Plaintiffs and the Rule 23 Class for work performed in excess of 40 hours per workweek with overtime premium wages in violation of 12 NYCRR 142-2.2;

(e)  whether Defendants have failed to compensate Plaintiffs and the Rule 23 Class for work performed in excess of 10 hours per workday with an extra hour of premium pay at the minimum wage rate as required by 12 NYCRR s 137-1.7;

(f)  whether Defendants have engaged in a pattern, practice, or policy of encouraging Plaintiffs and the Rule 23 Class to work "off the clock," and/or failing to pay Plaintiffs and the Rule 23 Class for all hours worked in excess of 40 hours per workweek, and/or failing to pay Plaintiffs and the Rule 23 Class a "spread of hours" premium for hours worked in excess of 10 per workday; and

(g)  the nature and extent of Rule 23 Class-wide injury and the appropriate measure of damages for the class.

35.    Plaintiffs have retained counsel competent and experienced in class action and complex labor and employment litigation.

36.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of a wage and hour litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously

prosecute a lawsuit in federal court against a corporate defendant. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures. Although the relative damages suffered by individual Rule 23 Class Members are not small, such damages could be exceeded by the expense and burden of individual prosecution of this litigation. In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

37.     Furthermore, upon information and belief, a class action gives both current and former employees a vehicle for the vindication of rights they would otherwise be too afraid to assert.  Current employees fear direct or indirect retaliation at their current job.  Former employees fear that bringing claims could harm their employment and potential for future employment.  A class action provides class members who are not named in the complaint a degree of anonymity which reduces these risks.

## CLASSWIDE FACTUAL ALLEGATAIONS

38.     All of the work that Plaintiffs, the members of the Rule 23 Class, and the members of the FLSA Class (collectively, "Class Members") have performed has been assigned by Defendants and/or Defendants have been aware of all of the work that Plaintiffs and the Class Members have performed.

39.     As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and the New York Labor Law. This pattern or practice includes but is not limited to:

(a) willfully failing to record all of the time that its employees, including Plaintiffs and the Class Members, have worked for the benefit of Defendants;

(b) willfully failing to fully compensate its employees, including Plaintiffs and the Class Members, for all of the hours that they have worked for the benefit of Defendants;

(c) willfully failing to pay its employees, including Plaintiffs and the Class Members, a premium for hours that they worked in excess of 40 hours per week; and

(d) willfully failing to pay its employees, including Plaintiffs and the Class Members, a premium for working in excess of 10 hours per workday.

40.    Upon information and belief, Defendants' unlawful conduct described in this Complaint is pursuant to a corporate policy or practice of attempting to minimize labor costs by violating the FLSA and the New York Labor Law.

41.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

42.    Defendants John Doe Bonding Companies 1-20 furnished a Labor and Material Payment Bond(s) to Defendants in furtherance of one or more of Defendants' construction projects, the terms of which insured that John Doe Bonding Companies 1-20 would pay unpaid wages to the Plaintiffs and the putative class members in the event Defendants failed to pay these wages.

## PLAINTIFFS' FACTUAL ALLEGATIONS

**A. Moises Sandoval**

43.    Plaintiff Moises Sandoval was hired by Defendants in approximately April 2000 as a security guard for a site in Far Rockaway, New York.

44.    Moises has worked for Defendants from approximately April 2000 through the time of the filing of this Complaint.

45.     Moises has worked as a security guard for Denfendants' construction sites in Far Rockaway, Staten Island, and the Bronx, including 168th St and Franklin Ave., 1022 Rev. James A. Polite Ave., Franklin and Prospect Ave., Stephanie Ave. and Southern Blvd., and 167th St. and 3rd Ave, and Serviam Gardens at 323 East 198th St.

46.     Since July 29, 2004, Moises has usually worked from approximately 3:00 or 3:30 p.m. to 7:00 a.m., Monday through Friday, then 3:30 p.m. Saturday through 7:00 a.m. Monday. He is not supposed to leave the site for the duration of his shift.  As a result, Moises generally works 117 to 120 hours per week.

47.     In 2000, when Moises began working at the Rockaway site, there were no bathroom facilities.  He complained to his bosses, but they ignored him.  He continued to work there for approximately one year without bathroom facilities.

48.     For working his scheduled hours, Moises was paid $600 per week.  His pay stubs did not contain an hourly rate, nor did they record the number of hours he worked.

49.     In addition to Moises's scheduled hours, he has sometimes had to wait up to an hour past the scheduled end of his shift for his relief to arrive.  He has not been given any extra compensation for working these extra unscheduled hours.

50.     In fact, upon information and belief, Defendants have not recorded Moises's hours at all.  Moises has not been given a timesheet to fill in or a clock to punch.

51.     Defendants have not given Moises any extra compensation for exceeding a spread of ten hours worked per day.

52.     Moises has often complained to his bosses at Galaxy about working 120 hours a week, but they indicated that it was standard practice.

53.     Defendants' pattern or practice of violating the FLSA and the New York Labor Law, as described in this complaint, affected Moises at each site where he worked.

54.     When building or state inspectors visited the site during the day, Moises's supervisors would tell him to go to a nearby store to buy something, so as to stay out of the inspectors' sight.

55.     Defendants' failure to pay Moises for all his hours worked has been willful.

56.     Defendants' failure to pay Moises an overtime premium for his work in excess of 40 hours per week has been willful.

57.     Defendants' failure to pay Moises for exceeding a spread of ten hours per day has been willful.

**B. Manuel Sandoval**

58.     Plaintiff Manuel Sandoval was hired by Defendants in approximately 1990 or 1991 as a building superintendant.

59.     Manuel worked for Defendants from approximately 1990 or 1991 through September 10, 2008.

60.     From no later than July 29, 2004 until he left his employment with Defendants, Manuel worked as a security guard for Defendants at construction sites in the New York metropolitan area, including at 141st St. and 130th St. and 7th Ave. in Manhattan, and 167th St. and 3rd Ave., 195th St. and Grand Concourse, and Webster Ave. and East 180th St. in the Bronx. He was supervised by, among other people, a man named Tazo [surname unknown].

61.     Manuel was usually scheduled to work from approximately 3:00 or 3:30 p.m. to 7:00 a.m., Monday through Friday, then 3:30 p.m. Saturday through 7:00 a.m. Monday.   He

was not supposed to leave the site for the duration of his shift.  As a result, Manuel generally worked 117 to 120 hours per week.

62.     For working his scheduled hours Monday through Friday, Manuel was paid $420 per week.  His pay stubs did not contain an hourly rate, nor did they record the number of hours he worked.

63.     From approximately 2002 until approximately May 2008, for working his scheduled hours on Saturday through Monday, Manuel received a separate personal check of $280.

64.     From approximately May 2008 through the end of Manuel's employment with Defendants, Defendants paid him only $480 per week for all his hours, including his weekend work.

65.     Manuel and other workers repeatedly complained to their supervisors, including Tazo, that their paychecks did not record the number of hours worked.

66.     In addition to Manuel's scheduled hours, on a number of occasions each month he had to wait up to an hour past the scheduled end of his shift for his relief to arrive.  He was not given any extra compensation for working these extra unscheduled hours.

67.     In fact, upon information and belief, Defendants did not record Manuel's hours at all.  Manuel was not told to record his hours, nor given a mechanism with which to record them.

68.     Defendants did not give Manuel any extra compensation for exceeding a spread of ten hours worked per day.

69.     On August 27, 2008, Manuel filed a complaint with the NY State Department of Labor Division of Labor Standards, alleging that Galaxy violated minimum wage and overtime laws.

70.     Defendants' pattern or practice of violating the FLSA and the New York Labor Law, as described in this complaint, affected Manuel at each site where he worked.

71.     Around 2008, when building or state inspectors visited the site, Manuel's supervisors would hide him, allegedly because Defendants lacked a license to employ security personnel.

72.     Defendants' failure to pay Manuel for all his hours worked was willful.

73.     Defendants' failure to pay Manuel an overtime premium for his work in excess of 40 hours per week was willful.

74.     Defendants' failure to pay Manuel for exceeding a spread of ten hours per day was willful.

**C. Saleh Aldailam**

75.     Plaintiff Saleh Aldailam was hired by Defendants in 1987 as a security guard.

76.     Saleh worked for Defendants from approximately 1987 through January 2010, taking several three- or four-month breaks to return to his native Yemen.

77.     Saleh worked as a security guard for Defendants at various construction sites throughout the New York metropolitan area, including, among others, West 153rd St. and 8th Ave., and Serviam Gardens at East 198th St., and 1st Ave. and 168th St.

78.     From approximately 1998 through 2008, Saleh worked from approximately 3:00 p.m. to 7:00 a.m., Monday through Friday, then 3:30 p.m. Saturday through 7:00 a.m. Monday. He was not supposed to leave the site for the duration of his shift.  As a result, Saleh generally worked 120 hours per week.

13

79.     At approximately noon or 1 p.m. on around July 7, 2008, a dog owned by one of Galaxy's managers attacked Saleh and bit him around the right thigh and buttocks.  Saleh was hospitalized for two days and required 21 stitches to close the wounds.

80.     Many of the sites Saleh worked had no heat, including 153rd St. and 8th Ave.

81.     In the past several years, Saleh's health has deteriorated. He has begun taking heart medication and medications to regulate his blood pressure and blood-sugar level.

82.     Saleh often asked Mr. Zervoudis for a day off due to his deteriorating health.  Mr. Zervoudis, however, told Saleh that if he took a day off he would lose his job.

83.     For example, sometime in 2006, 19 years after beginning his work with Defendants, Saleh asked Mr. Zervoudis for a day off.  Mr. Zervoudis refused, saying, "This is our way of working.  If you are not interested, go home."

84.     Finally, as a response to Saleh's heart condition, beginning sometime in 2009 through January 2010, Saleh was given Fridays off.  He still worked approximately 104 hours per week.

85.     For working his scheduled hours, Saleh was paid $600 per week in gross salary plus $200 per week in "expenses."  His pay stubs did not contain an hourly rate, nor did they record the number of hours he worked.

86.     In addition to Saleh's scheduled hours, he frequently had to wait up to an hour and a half past the scheduled end of his shift for his relief to arrive.  He was not given any extra compensation for working these extra unscheduled hours.  When Saleh worked at Serviam Gardens, for example, the day guard was half-an-hour late at least once a week, often as many as three or four times per week.

87.     In fact, upon information and belief, Defendants did not record Saleh's hours at all.  Saleh was not told to record his hours, nor given a mechanism with which to record them..

88.     Defendants did not give Saleh any extra compensation for exceeding a spread of ten hours worked per day.

89.     Defendants' pattern or practice of violating the FLSA and the New York Labor Law, as described in this complaint, affected Saleh at each site where he worked.

90.     Within the last several years, Saleh's supervisors told him that if anyone asked him about his hours and wages, he should respond that he worked 8 hours per day and was paid $10 per hour.

91.     Defendants' failure to pay Saleh for all his hours worked was willful.

92.     Defendants' failure to pay Saleh an overtime premium for his work in excess of 40 hours per week was willful.

93.     Defendants' failure to pay Saleh for exceeding a spread of ten hours per day was willful.

**D.  Emilio Torres**

94.     Plaintiff Emilio Torres was hired by Defendants in 2006 as a machine operator.

95.     Torres worked for Defendants from approximately 2006 through April 14, 2010, at which point he was injured on the job.

96.     Torres worked as a machine operator for Defendants at construction sites in the New York metropolitan area, including East 136th St. and Willis Ave., East 175th St. and Walton Ave., East 198th St. and Bainbridge Ave., and East 194th St. and Decatur Ave. in the Bronx and West 130th St. and  Adam Clayton Powell Jr. Blvd. in Manhattan.  He was directly supervised by

Steve Zervoudis.  Zervoudis was personally responsible for hiring Torres and setting Torres's

salary.  In addition, Zervoudis visited each of his construction sites on a regular basis.

97.     Though Torres's hours varied from site to site, he was usually scheduled to work

from approximately 7:00 a.m. to 3:30 p.m., Monday through Saturday.  At certain sites, Torres

would work until 5:00 or 7:00 p.m. several times a week.  In addition, Torres would sometimes

work 10:00 a.m. through 3:00 p.m. on Sundays.

98.     For working his scheduled hours each day, Torres was, at first paid, $150 per day,

then later $175 and, finally, $200 per day.

99.     When Zervoudis hired Torres, he said that Torres would be working 7:00 a.m. to

3:30 p.m. six days a week, and that Torres would be paid $150 per day.

100.     At first, Torres's weekly pay stubs and pay checks did not record or reflect any

hours worked over 40.  Instead, for working a full shift on Saturday, he was given a separate

personal check at his regular daily pay rate of $150.  For hours worked past 3:30 p.m. during the

week, he was paid by personal check or in cash at his regular hourly rate.

101.     From approximately 2006 through June 2009, Torres was not paid at a premium

overtime rate for the hours he worked in excess of 40 per workweek.

102.     Defendants did not give Torres any extra compensation for exceeding a spread of

ten hours worked per day.

103.     Defendants' pattern or practice of violating the FLSA and the New York Labor

Law, as described in this complaint, affected Torres at each site where he worked through June

2009.

104.     Defendants' failure to pay Torres an overtime premium for his work in excess of

40 hours per week was willful.

105.    Defendants' failure to pay Torres for exceeding a spread of ten hours per day was willful.

### FIRST CAUSE OF ACTION
### (Fair Labor Standards Act)

106.    Plaintiffs re-allege and incorporate by reference all allegations set forth in all preceding paragraphs of this Complaint.

107.    Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this complaint.

108.    Plaintiffs have consented to be parties to this action pursuant to 29 U.S.C. § 216(b).

109.    At all times relevant, Plaintiffs were employed in an enterprise engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207 (a).

110.    Defendants have willfully failed to record, credit, or properly compensate Plaintiffs and the FLSA Class Members for work performed in excess of 40 hours per workweek.

111.    Defendants have willfully failed to record, credit, or compensate Plaintiffs and the FLSA Class Members for "off the clock" hours worked in addition to their scheduled shifts.

112.    Defendants also violated the FLSA, 29 U.S.C. § 211(c), by failing to keep required records.

113.    Defendants' violations of the FLSA, as described in this Complaint have been willful and intentional.  Defendants have not made a good faith effort to comply with the FLSA with respect to its compensation of Plaintiffs and other similarly situated current and former employees.

114.    Because of Defendants' willful violations of the FLSA, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

17

115.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and all others similarly situated have suffered damages by being denied overtime compensation and other wages in accordance with 29 U.S.C. §§ 206 et seq.

116.    As a result of the unlawful acts of Defendants, Plaintiffs and the FLSA Class have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**(New York Labor Law: Unpaid Overtime Premium Hourly Wages)**

117.    Plaintiffs re-allege and incorporate by reference all allegations set forth in all preceding paragraphs of this Complaint.

118.    At times relevant to this action, Plaintiffs were employees and Defendants have been employers within the meaning of the New York Labor Law §§ 190, 651(2).

119.    Defendants have willfully failed to record, credit, or properly compensate Plaintiffs and the Rule 23 Class Members for work performed in excess of 40 hours per workweek.

120.    Defendants have willfully failed to record or compensate Plaintiffs and the Rule 23 Class Members for "off the clock" hours worked in addition to their scheduled shifts.

121.    Defendants failed to pay employees an extra hour of pay at the basic minimum hourly wage rate for each day when an employee's shifts exceeded 10 hours, in violation of 12 NYCRRR § 142-2.4.

122.    Defendants failed to maintain proper employment records as required by 12 NYCRR § 142-2.6 and New York Labor Law §§ 661 and 195(4).

123.   Defendants' failure to pay the required wages as set forth above was willful within the meaning of New York Labor Law §§ 198, 663 and 681.

124.   Employees are entitled to the unpaid wages required by New York Labor Law.

## THIRD CAUSE OF ACTION
### (Suretyship)

125.   Plaintiffs re-allege and incorporate by reference all allegations set forth in all preceding paragraphs of this Complaint.

126.   By issuing Bonds ("the Bonds") to each of the Defendants, John Doe Bonding Companies assumed joint and several liability with Defendants to pay Plaintiffs any and all wages due and owing to them which Defendants failed to pay.

127.   Pursuant to the terms of each labor and material payment bond issued in connection with each construction project, each John Doe Bonding Company is required to make payment to Plaintiffs in an amount not yet determined, plus interest.

## JURY DEMAND

128.   Plaintiffs request a jury trial on all issues of fact and damages arising herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated persons, pray for the following relief:

A.   That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this court's issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that this civil action has been filed, of

the nature of the action, and of their right to join this lawsuit if they believe they were denied proper hourly compensation and premium overtime wages;

B.     Unpaid wages and an additional and equal amount as liquidated damages as pursuant to 29 U.S.C. § 201 et seq. and the supporting United States Department of Labor regulations;

C.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.     Designation of Plaintiffs Manuel Sandoval, Moises Sandoval, and Saleh Aldailam as representatives of the Class, and counsel of record as Class Counsel;

E.     Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under New York Labor Law, Article 6, §§ 190 et seq., and Article 19, §§ 650 et seq., and the supporting New York State Department of Labor regulations;

F.     Prejudgment interest;

G.     An injunction requiring Defendants and any and all subsidiaries, or successors-in-interest, to pay all statutorily-required wages pursuant to the New York Labor Law;

H.     After determination of class-wide liability, of individual damages, and of Defendants' liability for back pay, notice to class members of the opportunity to intervene in this action or to file separate actions to recover liquidated damages under Article 19, § 681(1) and Article 6 § 198(1-a) of the New York Labor Law;

I.     Attorneys' fees and costs of the action; and

J.     Such other relief as this Court shall deem just and proper.

Dated: New York, New York

July 29, 2010

Respectfully submitted,

**ARENSON, DITTMAR & KARBAN**

By: Steven Arenson
295 Madison Avenue, Suite 700
New York, New York 10017
(212) 490-3600


**VIRGINIA & AMBINDER, LLP**

_____Consent Given_____
By:  Lloyd Ambinder
111 Broadway, 14th Floor
New York, N.Y. 10006
(212) 943-9080

Attorneys for Plaintiffs Moises Sandoval, Manuel
Sandoval, Saleh Aldailam, Emilio Torres, and the
Putative Class